UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OLVIN RENE YANEZ VELASQUEZ (A-Number: 221-489-928),

Petitioner,

v.

WARDEN, *et al.*,

Respondents.

Case No.  1:26-cv-1781-DJC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Olvin Rene Yanez Velasquez entered the United States in 2001 and was detained by ICE in 2026.  Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his detention violates the Immigration and Nationality Act. I previously issued findings and recommendations, which I then vacated after respondents objected.  The parties have since filed supplemental briefing.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States in 2001.  ECF No. 1 at 3.  There is no allegation or evidence that, prior to his current detention, petitioner had any contact with immigration officials. *See* ECF No. 14-1 at 1-3.  Petitioner also has no criminal history.  *Id*. at 3.

In February 2026, petitioner was detained by ICE in Baltimore, Maryland.  ECF No. 1 ¶ 17.  There is no allegation or evidence that petitioner has received a bond hearing; on the

1

contrary, the government asserts that "petitioner is subject to mandatory detention and thus ineligible for a bond hearing."  *See* ECF No. 7 at 2.

**Procedural History**

On March 5, 2026, petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order.  ECF No. 1.  On March 8, 2026, respondents filed a combined answer to the petition and response to the motion for temporary restraining order.  ECF No. 7.  Petitioner filed a reply two days thereafter.  ECF No. 8.  On March 11, 2026, the court denied petitioner's motion for temporary restraining order because petitioner "has provided insufficient factual information" and "fails to cite any authority under which he is entitled to relief."  ECF No. 9.  The court referred the matter to me.  *Id*.

On April 10, 2026, I issued findings and recommendations, recommending that the petition be granted and that petitioner be immediately released.  ECF No. 10.  After respondents filed objections, I vacated my findings and recommendations and ordered supplemental briefing.  *See* ECF Nos. 10, 11, and 12.  On April 21, 2026, petitioner filed a supplemental brief.  ECF No. 13.  That same day, respondents filed a response, as well as petitioner's Form I-213.  ECF No. 14.  On April 24, 2026, petitioner filed a reply.  ECF No. 15.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention violates the Immigration and Nationality Act ("INA").[1] ECF No. 1 ¶ 30.  Respondents counter that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), as opposed to being subject to discretionary detention under 8 U.S.C. § 1226(a).  ECF No. 7 at 1-2.  In his supplemental brief, petitioner argues that he "was detained in the US, not at the border, and therefore his detention is governed by § 1226(a) not § 1225(b), which is consistent with this Court's previous rulings on similar cases."  ECF No. 13 at 2.

In their supplemental response, respondents argue that the petition should be denied as "insufficiently ple[d]."  ECF No. 14 at 2.  Respondents cite two district court cases, neither of which supports their position.  First, that "the petitioner bears the burden of proving that he is being held contrary to law" does not mean that the petition here must be dismissed.  *See Sepulveda Ayala v. Bondi,* 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (cleaned up).  Indeed, *Sepulveda Ayala* does not address a situation where, as here, the government argues that the petition is insufficiently pled.  *See id.*  Moreover, as set forth below, I find that petitioner has met his burden.

Second, respondents are correct that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  *See Davydov v. Casey*, No. 25-cv-0845-RSH-AHG, 2025 WL 2042355, at *3 (S.D. Cal. July 21, 2025) (citing Rules Governing Section 2254 Cases).  Respondents, however, do not identify any omission from the petition.  Instead, respondents rely solely on my prior finding that "the petition is short on factual allegations and its claims lack detail."  *See* ECF no. 14 at 2 (citing ECF No. 10 at 2).  That prior finding, however, is not mutually exclusive with the finding that the petition specified the ground for relief—the INA—and the facts supporting that ground, namely, that petitioner was detained in the interior of the United States.  *See* ECF No. 1 ¶¶ 17, 30.

---

[1] Because the petition should be granted on the basis of petitioner's statutory claim alone, I find it unnecessary to address his claim alleging a violation of the Fifth Amendment.  *See* ECF No. 1 at 5.  It bears mention, however, that petitioner would be unlikely to succeed on this claim because there is no evidence or allegation that petitioner was previously released on his own recognizance such that he had a protected liberty interest at the time he was detained by ICE.

Indeed, the government presumably understood the petition as raising the INA as a ground for relief, since it argued—as it has in many other cases—that petitioner's detention did not violate the INA because, in its view, petitioner is subject to mandatory detention under section 1225(b). *See* ECF No. 7 at 1-2. Accordingly, this case is not akin to others where the petitioner improperly raises a new ground for relief after the petition has been filed. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief. In order for the State to be properly advised of additional claims, they should be presented in an amended petition or, as ordered in this case, in a statement of additional grounds."). On the contrary, the petition "properly advised" respondents of petitioner's INA claim. *See id.*

Moreover, petitioner has since submitted a supplemental brief arguing that his detention is governed by section 1226(a), not section 1225(b). *See* ECF No. 13 at 2; ECF No. 15 at 2. Respondents also have been afforded another opportunity to respond to petitioner's statutory claim. *See* ECF No. 14. Under these circumstances, I find that it is appropriate to proceed to an analysis of the merits of petitioner's statutory claim.

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains that

4

"all applicants for admission within the meaning of 8 U.S.C. 1225(a) are subject to mandatory detention under 8 U.S.C. 1225(b)." *See* ECF No. 7 at 1 n.1.  Respondents urge the court to follow suit and find that petitioner is subject to mandatory detention under 1225(b)(2). *Id*. at 1-2. *Id*.

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019).  Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).  There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language.  Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[2]  8 U.S.C. §§ 1226(a)(1)-(2).

The government urges the court to read section 1225(b)(2)(A) as using the terms "applicant for admission" and "seeking admission" interchangeably. *See* ECF No. 7 at 1-2.  According to the government, all noncitizens who have not been admitted to the United States— i.e., "applicants for admission"—are necessarily "seeking admission" for purposes of section 1225(b)(2)(A). *Id*.  Thus, the government contends, section 1225(b)(2)(A) applies to noncitizens who are "applicants for admission." *Id*.

I find that the government's interpretation violates the rule against surplusage in three ways.  First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be

---

[2] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289.  There is no argument or evidence suggesting that this section applies to petitioner.

an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondents' theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest

6

when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. 2025) ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." 583 U.S. at 289, 297. While the government's interpretation was endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited. *See Loper Bright*, 603 U.S. at 400.

Accordingly, because petitioner was detained in the interior of the United States, I find that his detention is governed by section 1226(a) and not, as respondents argue, by section 1225(b). Given this finding, I must determine whether the appropriate relief is release or a bond hearing. Petitioner requests immediate release. ECF No. 1 at 5. Respondents argue that a bond hearing is the proper remedy. ECF No. 14 at 2-3.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

7

103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for petitioner's detention. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the provision of a bond hearing is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Moreover, "there is no indication before the Court of prima facie evidence that [p]etitioner could be found to be a risk of flight or danger to the community." *See id*. Accordingly, "the government's interest in detaining [petitioner] without proper process is slight." *See J.S.H.M.*, 2025 WL 2938808, at *16. Indeed, "the only potential injury that the government faces is a short delay in detaining [petitioner] if it ultimately demonstrates to a neutral decisionmaker that [his] detention is necessary to prevent flight or danger to the community." *See Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 941 (N.D. Cal. 2025) (internal quotation marks and citation omitted).

**Conclusion**

Based on the foregoing, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 221-489-928) from their custody. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its

implementing regulations, at which petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this Order.

4. The Clerk of Court be further directed to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 28, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

9